# KATHERINE W. LAMBERT, TRUSTEE, ETC.

## V.

# WILLIAM K. BARKER, ET AL.

Record No. 822276

September 5, 1986

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson, and Russell, JJ., and Gordon, Retired Justice

*Benjamin C. Ackerly (Dennis T. Lewandowski; John A. Lucas; Hunton & Williams*, on briefs), for appellant.
*Thomas F. Eubank (Spinella, Owings, Jackson, Steverson, Mizell & Eubank*, on brief), for appellees.

COCHRAN, J., delivered the opinion of the Court.

The central question in this appeal is whether payment by the obligors of a note to a party not in possession of the note discharged the obligation of the makers and precluded recovery on the note by the party in possession.

The facts surrounding the underlying transactions are substantially undisputed. In May 1978, William K. Barker and Barbara R. Barker acquired from Robert O. Davis, Jr., property located at 2610 Monument Avenue, Richmond. As part of the consideration for their purchase, the Barkers executed a note, secured by a second deed of trust on the property, in the principal amount of $20,300 payable to Davis, or order, in monthly installments.

In December 1978, the Barkers conveyed the property to S. David Beloff, who in turn conveyed it to Charles P. Harwood, Jr., and Ann G. Harwood in January 1979. The Harwoods, uniting in the deed from Beloff, expressly agreed to pay the Barker note. Pursuant to a loan agreement dated November 1, 1979, Davis transferred this note, along with certain other notes, to Katherine W. Lambert (who signed her name as Kathleen), Trustee for

Cecil-Waller & Sterling, Inc. (Lambert), to secure a loan from Cecil-Waller & Sterling to Davis in the amount of $197,234.72. The loan agreement between Davis and Lambert provided that the monthly installments on the Barker note would continue to be payable to Davis, while any prepayment was to be made to Lambert.

In February 1980, the Harwoods conveyed the property to Bryce A. Bugg and Nancy S. Bugg. At closing, Davis provided an affidavit in which he falsely asserted that he was the noteholder but that the Barker note was lost. The sum of $18,446.17 was withheld from the sale proceeds and paid to Davis, purportedly in satisfaction of the note.

In 1981, Lambert instituted this action against the Barkers and the Harwoods to recover $18,497.94 on the note, together with interest, costs, and attorney's fees. Alleging the note was in default and this amount represented the unpaid balance, Lambert claimed she was entitled to payment as the holder of the note.

The Barkers and Harwoods filed their separate grounds of defense denying liability on the ground that the Harwoods' payment to Davis satisfied the note in full. They also filed third-party motions for judgment against the attorney who represented the Buggs in their purchase from the Harwoods and against his law firm, alleging negligence and breach of fiduciary duty in failing properly to discharge the obligation of the note by paying the holder.

After a hearing at which Lambert tendered the note in her possession indorsed by Davis, the trial court granted a motion for summary judgment filed by the Barkers and the Harwoods and dismissed a motion for summary judgment filed by Lambert. The court ruled that Code § 8.9-318(3)[1] was controlling and required Lambert to give notice to both the Barkers and the Harwoods of the pledge of the note. Finding no such notice had been given,[2] the

---

[1] Code § 8.9-318(3) (Supp. 1986) provides:

The account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective. If requested by the account debtor, the assignee must seasonably furnish reasonable proof that the assignment has been made and unless he does so the account debtor may pay the assignor.

[2] Lambert assigned error to this finding, contending that the Barkers had both actual and constructive notice of the transfer of the note to Lambert. In view of our holding that no notice was required, we do not reach this issue.

court ruled that Lambert could not "question" payments by the Barkers or the Harwoods made directly to Davis. Accordingly, the court dismissed both the principal action and the third-party motions for judgment. Lambert appealed the court's dismissal of her action against the Barkers.

Lambert contends that the court erroneously applied Code § 8.9-318(3) to the pledge of a note as collateral. She says § 8.9-318(3) does not apply to assignments of instruments and she was not required to give notice to the makers of the note. Rather, the makers are protected because they can demand production of the instrument and refuse payment to anyone other than the holder. We agree.

Code § 8.9-318(3) is clearly inapplicable to this transaction. That provision sets forth the rights of account debtors following the assignment of certain contracts. An account debtor is one who is obligated on an account, chattel paper, or general intangible. Code § 8.9-105(1)(a). By definition, accounts do not include any right to payment evidenced by an instrument, and general intangibles do not include instruments. Code § 8.9-106. As the Barker note was a negotiable instrument under Code § 8.3-104 and, therefore, an instrument under Code § 8.9-105(1)(i), it could not also be an account or general intangible subject to the notice requirements of § 8.9-318(3). Moreover, an instrument is not chattel paper unless it is part of a group of writings which evidence both a monetary obligation and a security interest in or lease of specific goods. Code § 8.9-105(1)(b). Chattel paper does not include an instrument such as the Barker note establishing a security interest in real property. *Id.*; *see* Code § 8.9-105(1)(h) (defining "goods"). Code § 8.9-318(3) therefore has no relevance to Davis's pledge of the Barker note to Lambert. Rather, this transaction is governed by provisions of the Uniform Commercial Code (UCC) applicable to negotiable instruments.

The Barkers contend, as they did below, that payment to Davis discharged their liability as makers of the note. The right of a party to payment, however, depends upon his status as a holder. Code § 8.3-301. A holder is one who is in possession of an instrument issued or indorsed to him or his order, to bearer, or in blank. Code § 8.1-201(20); *Becker* v. *Nat. Bank & Trust Co.*, 222 Va. 716, 720, 284 S.E.2d 793, 795 (1981); *see Yahn & McDonnell* v. *Farmers Bank*, 708 F.2d 104, 110 (3d Cir. 1983); *Champion Int'l Corp.* v. *Union Nat'l Bank*, 73 N.C. App. 147, 149, 325 S.E.2d

656, 657 (1985). Payment or satisfaction discharges the liability of a party only if made to the holder of the instrument. Code § 8.3-603; *see Culbertson State Bank* v. *Dahl,* 617 P.2d 1295, 1297 (Mont. 1980); *Champion,* 73 N.C. App. at 149-50, 325 S.E.2d at 658. Because payment in satisfaction of the instrument must be made to a party in possession in order to discharge the payor's liability, no notice is required for the protection of the payor. Rather, the payor may protect himself by demanding production of the instrument and refusing payment to any party not in possession unless in an action on the obligation the owner proves his ownership.[3]

■ Payment to an authorized agent of the holder will also satisfy the requirement of payment to the holder, resulting in discharge. Code § 8.1-103 (agency principles supplement UCC provisions); *Security Company* v. *Juliano, Inc.,* 203 Va. 827, 833, 127 S.E.2d 348, 352 (1962) (decided prior to adoption of UCC in Virginia); *Caballero* v. *Wilkinson,* 367 So. 2d 349, 352 (La. 1979); 6 R. Anderson, Uniform Commercial Code § 3-603:5 (3d ed. 1984); 5 W. Hawkland & L. Lawrence, Uniform Commercial Code Series § 3-603:04 (1984). But the burden of proving an agency relationship rests on the party claiming payment as a defense.

> One making payment to an agent has the burden of showing that the agent has either express or apparent authority to receive such payment upon behalf of his principal, and the evidence to that effect must be clear and convincing. If payment is made to a party who does not have in hand the obligation, the debtor takes the risk of such party having the authority to make collection.

*Security Company,* 203 Va. at 833, 127 S.E.2d at 352 (citations omitted); *see* Code § 8.3-307(2) (defendant has burden of establishing defenses).

---

[3] Thus, the owner of a lost note is not without remedy under the Uniform Commercial Code. He may recover from a party liable on the note "upon due proof of his ownership, the facts which prevent his production of the instrument and its terms." Code § 8.3-804. But he may also be required by the court to provide security indemnifying the payor against potential double liability in the event the instrument later appears in the possession of a holder in due course. *Id.* & official comment.

It is clear that Davis was not the holder of the Barker note at the time of payment, as the note was not in his possession.[4] By delivering the note, indorsed in blank,[5] to Lambert, Davis negotiated the instrument and made Lambert the holder.[6] Code §§ 8.1-201(20), 8.3-202; *Becker*, 222 Va. at 720-21, 284 S.E.2d at 795. Payment to Davis could therefore discharge the Barkers' liability only if Davis were the authorized agent of Lambert. Moreover, it was the Barkers' responsibility to raise and establish this affirmative defense. *Security Company*, 203 Va. at 833, 127 S.E.2d at 352. The Barkers, however, never asserted payment to Lambert; nor did they allege that payment to Davis constituted payment to Lambert under an actual or implied agency theory. Having failed properly to assert a defense of payment to Lambert, the noteholder, the Barkers were not entitled to summary judgment. To the contrary, Lambert was entitled to judgment against the Barkers upon their failure to raise a valid defense.

The Barkers contend that, even if Lambert were the holder of the note, she was not a holder in due course under Code § 8.3-302 and therefore did not take the instrument free from defenses under Code § 8.3-305. Because the Barkers failed properly to assert the defense of payment to Lambert, Lambert's status — whether as a holder in due course or not in due course — does not affect this result.

---

[4] *See* Code § 8.3-804 & official comment (owner of lost, destroyed, or stolen instrument is not holder because he is not in possession and does not have holder's prima facie right to recover but must prove his case).

[5] In oral argument, counsel for the Barkers for the first time contended that the note was not indorsed until after the time Davis received payment on it. On brief, however, the Barkers agreed with Lambert's statement of the facts, which stated that, pursuant to the loan agreement between Davis and Lambert, Davis transferred and negotiated the note by indorsing and delivering it to Lambert. Furthermore, signatures on instruments are admitted unless specifically denied in the pleadings. Code § 8.3-307. Having failed to place in issue the validity of the purported signature of Davis or the question whether the note bore his signature at the time of transfer, the Barkers may not now inject these issues of fact.

[6] Contrary to the Barkers' contention, a party may both have a security interest in a note and be its holder, entitled to enforce payment. *Levin* v. *Virginia Nat. Bank*, 220 Va. 1087, 1090-92, 265 S.E.2d 758, 759-61 (1980); *see* Code § 8.3-302(4) & official comment 4 (pledgee in security transaction may become holder in due course to the extent of his interest).

The amount payable on the note is not controverted. Accordingly, we will reverse the judgment of the trial court and enter final judgment in favor of Lambert.

*Reversed and final judgment.*