[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
ISSUE
A. Should the court grant the plaintiff, Mortgage Buyers of America's ("Mortgage Buyers"), motion for summary judgment brought against defendant, Wolfman, on count three of the CT Page 994 plaintiff's amended complaint.
B. Should the court grant the plaintiff, Mortgage Buyer's motion for summary judgment brought against Wolfman on count six of the plaintiff's amended complaint.
FACTS
A. Factual Background
On February 21, 1990, defendant Wolfman purchased from defendant Hunter property located at 6-7 Bridge Street, Norwich, Connecticut. On the same date, as consideration for the purchase price, the defendant Wolfman executed a promissory note ("note") promising to pay $22,637.72 plus interest to defendant Hunter or order. (Plaintiff's Exhibit, #11.) The note was secured by a second mortgage on the sale property in favor of defendant Hunter. (See Plaintiff's Exhibit, #11.) On June 17, 1991, Hunter executed a purchase agreement with Mortgage Buyers, in which Mortgage Buyers agreed to purchase the note and mortgage from Hunter for $15,389. (Plaintiff's Exhibit, #21.) On July 1, 1991, Mortgage Buyers informed Wolfman by certified mail that Mortgage Buyers intended to purchase the note and mortgage from Hunter, and requested that Wolfman confirm the amount owed on the note. (Plaintiff's Exhibit, #2, Deposition of Wolfman, p. 29.)
On or about July 3, 1991, Hunter signed the promissory note "PAY TO THE ORDER OF MORTGAGE BUYERS OF AMERICA, INC. WITHOUT RECOURSE. /s/ Douglas J. Hunter." (Plaintiff's Exhibit, #19), and executed an assignment of mortgage in favor of Mortgage Buyers. (Plaintiff's Exhibit, #23.) On July 3, 1991, Hunter forwarded the negotiated promissory note and the assignment of mortgage to the negotiated promissory note and the assignment of mortgage to the plaintiff at its California address. (Plaintiff's Exhibit, Affidavit of Judith Miller, President of Mortgage Buyers.)
On July 12, 1991, however, Hunter accepted $15,376 from Wolfman for the purchase of the note, although the note was not surrendered to Wolfman because Hunter had already endorsed and mailed it to the plaintiff. (Plaintiff's Exhibit, #13.) In return, Wolfman received a release of mortgage from Hunter, which was recorded in the town of Norwich land records on July CT Page 995 12, 1991, at Volume 1023, page 8. (Plaintiff's Exhibit, #24.)
Wolfman did not pay the installments due on the note for the months of July, August and September, 1991. (Miller Affidavit, 10.) On October 7, 1991, plaintiff notified Wolfman, through Wolfman's counsel, that if payment was not made prior to October 10, 1991, plaintiff would exercise its option under the terms of note to accelerate the entire amount of the principal and interest due. (Miller Affidavit, 11.)
On July 6, 1992, Hunter filed a voluntary petition for relief in the United States Bankruptcy Court, District of Massachusetts, pursuant to Chapter 7, Title 11 of the United States Bankruptcy Code.
B. Procedural Background
On August 16, 1991 the plaintiff brought this action against defendants Douglas Hunter and Michael Wolfman. On November 29, 1991, the plaintiff filed an amended, six count complaint, alleging against Hunter in count one breach of contract, in count two tortious inference with the plaintiff's contract rights, and in count five a violation of CUTPA, General Statutes 42-110a, et seq. The plaintiff also alleges against Wolfman in count three of the amended complaint full liability for the note, in count four intentional interference with the plaintiff's contract rights and in count six the plaintiff seeks foreclosure of the mortgage. As to Hunter, the plaintiff seeks damages and the recision of the release of mortgage given to Wolfman. As to Wolfman, the plaintiff seeks damages and the principal, interest and attorney's fees owing under the terms of the note, in addition to foreclosure of the mortgage. On December 19, 1991, Hunter filed an answer denying the essential allegations of the amended complaint. On January 17, 1992, Wolfman filed an answer denying the essential allegation of the amended complaint and alleging as a special defense that the plaintiff was not a holder in due course under General Statutes 42a-3-302. On August 10, 1992, Hunter filed a suggestion of bankruptcy with the court. On October 19, 1992, the plaintiff filed a reply denying the allegations of defendant Wolfman's special defense.
On June 23, 1993, the plaintiff filed a motion for summary judgment asserting that there is no genuine issue of material fact as to the plaintiff's status as a holder of the CT Page 996 note and mortgage made by Wolfman and that the plaintiff is entitled to judgment as a matter of law on the third and sixth counts of the amended complaint. In support of its motion, the plaintiff has submitted the Miller affidavit, certified copies of the deposition testimony of defendants Wolfman and Hunter, a copy of the note (Plaintiff's Exhibit, including a copy of the last page of the note containing Hunter's endorsement to plaintiff, copies of the cashiers checks utilized by Wolfman to pay Hunter for the purchase of the promissory note (Plaintiff's Exhibit, #13), a copy of the signed purchase agreement between plaintiff and Hunter (Plaintiff's Exhibit, #21), a copy of the assignment of the mortgage in favor of the plaintiff (Plaintiff's Exhibit, #23), and a certified copy of the Norwich land records containing the recorded discharge of mortgage in favor of Wolfman. (Plaintiff's Exhibit, #24.)
On August 27, 1993, the defendant Wolfman filed a request for leave to file an amended answer including seven additional special defenses alleging, respectively, lack of holder status, lack of consideration, special delivery of the note, set-off of the amounts paid to defendant Hunter, payment of the note, unjust enrichment, release of the mortgage. The plaintiff did not file an objection to the request to amend.
DISCUSSION
 Practice Book 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue . . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . . The test is whether a party would be entitled to a directed verdict on the same facts. CT Page 997
(Citations omitted; internal quotation marks omitted.) Connell v. Colwell, 214 Conn. 242, 246-47, 571 A.2d 116
(1990).
A. Summary Judgment as to Count Three — Liability on the Note
This case is controlled by the version of the U.C.C. in effect at the time of the execution of the note, February 21, 1990. See Catina v. Catina, 26 Conn. App. 359, 601 A.2d 543
(1992) (applying version of U.C.C. in effect at time of execution of note).
As provided by General Statutes (Rev. to 1989) 42a-3-301, "[t]he holder of an instrument whether or not he is the owner may. enforce payment in his own name." Under General Statutes (Rev. to 1989) 42a-1-201, a holder is a "person who is in possession of . . . an instrument . . ., issued or endorsed to him or to his order or to bearer or in blank." General Statutes (Rev. to 1989) 42a-3-306 provides that:
 unless [one] has the rights of a holder in due course any person takes the instrument subject to (a) all valid claims to it on the part of any person; and (b) all defenses of any party which would be available in an action on a simple contract; and (c) the defenses of want or failure of consideration, nonperformance of any condition precedent, nondelivery, or delivery for a special purpose; and (d) the defense that he or a person through whom he holds the instrument acquired it by theft, or that payment or satisfaction to such holder would be inconsistent with the terms of a restrictive endorsement. The claim of any third person to the instrument is not otherwise available as a defense to any third party liable thereon unless the third person himself defends the action for such third party.
General Statutes (Rev. to 1989) 42a-3-307 provides that "[w]hen signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense." See also Commonwealth Land Title Insurance v. Miller, 395 S.E.2d 243, 245 (Ga.App. 1990); Citicorp International Trading Co., Inc. v. Western Oil CT Page 998 Refining Co., Inc., 790 F. Sup. 428, 434 (S.D.N.Y. 1992) ("Proof of a note and a failure to make payment thereon establishes a prima facia case for recovery on the note.")
The plaintiff has submitted a copy of the note made payable to Douglas Hunter, or order, with the endorsement to plaintiff signed by Douglas Hunter, and offered to produce the original at the argument for short calendar if requested, but no request was made. (Plaintiff's Exhibit #11; see also Plaintiff's Memorandum, p. 4.) The plaintiff has also submitted the affidavit of Judith Miller, president of Mortgage Buyers, in which Miller states upon personal knowledge that Mortgage Buyers has not received any payments on the note. (Plaintiff's Exhibit, #11.)
Wolfman does not dispute the existence of the note, the plaintiff's possession, the lack of payment, or the validity of Hunter's endorsement, but he disputes the plaintiff's legal status as holder of the note and its right to enforce the note. (Defendant Wolfman's Memorandum in Opposition to Summary Judgment.)
The defendant Wolfman opposes summary judgment on two related grounds. First, Wolfman argues that the plaintiff is not a valid holder of the note because Hunter's negotiation and delivery to the plaintiff was conditioned on the full performance of the contract between Hunter and the plaintiff. Alternatively, Wolfman argues that, even if the plaintiff is a holder, it is not entitled to payment — again on the basis of the defense of conditional delivery — because the delivery of the note was conditioned on the completion of the purchase agreement. Because Wolfman characterizes both grounds as relying on the defense of conditional delivery, both grounds will be discussed jointly.
Wolfman notes that Hunter's negotiation of the promissory note to the plaintiff was made pursuant to the purchase agreement, which, he argues, was never fully executed because the plaintiff never paid Hunter. Therefore, Wolfman argues that the endorsement was merely conditional and, as such, it did not constitute an effective negotiation. In support of the argument Wolfman submits Hunter's certified deposition transcript, in which Hunter stated that the plaintiff never paid him for the note, a fact the plaintiff does not dispute. (Deposition of Hunter, p. 144; plaintiff's memorandum, p. 7.) CT Page 999 The defendant also submits Hunter's deposition testimony wherein Hunter stated that he believed the plaintiff's failure to schedule an appraisal of the mortgaged property after he delivered the negotiated note and the assignment of mortgage to the plaintiff was a breach of the purchase agreement entitling him to sell the note to Wolfman. (Deposition of Hunter, pp. 116, 122.) Wolfman claims that "[a] promissory note may, in this state, be delivered to the payee in escrow, to become effective if certain conditions are fulfilled, otherwise to remain ineffective." St. Paul's Episcopal Church v. Fields, 81 Conn. 670, 679, 72 A. 145 (1908).
General Statutes 42a-1-103 provides that "[u]nless displaced by the particular provisions of [title 42a], the principles of law and equity, . . . shall supplement its provisions." In other jurisdictions that have construed U.C.C. 1-103, the defense of conditional delivery has been held to supplement the U.C.C., and, therefore, the case law on conditional delivery decided prior to the enactment of the U.C.C. has received continued application under the provisions of the U.C.C. See Scott v. Wall, 55 Wash. App. 404, 777 P.2d 581
(Wash., App. 1989) (and cases cited therein). Therefore, the case law in Connecticut regarding conditional delivery; see St. Paul's Episcopal Church v. Fields, supra; is applicable to the current law of negotiable instruments, General Statutes 42a-3-101, et seq.
Nevertheless, the case cited by the defendant, St. Paul's Episcopal Church, supra, is factually distinguishable from the facts of the present case. In St. Paul's Episcopal Church, supra, 675-76, the initial issuance of the note to the payee named in the instrument was subject to conditions, not the subsequent negotiation between the payee to a second holder. Therefore, because the conditions upon which the note was to become effective never occurred, the note never became effective and the maker never became liable under the terms of the note. Id.
With the defense of conditional delivery, the issue is whether the instrument ever becomes a binding obligation, based on the happening of certain conditions, not whether a subsequent negotiation is effective to transfer the rights of a holder. Scott v. Wall, supra, 583 ("[C]onditional delivery is a valid defense in an action for payment between original parties of the note." (Emphasis added.)); see also Klock v. CT Page 1000 Pierson, 123 Conn. 465, 467, 196 A.2d 147 (1937) (initial conditional delivery of note to payee is defense of maker showing that note has not yet become effective); see also St. Paul's Episcopal Church v. Fields, supra, 679. In the present case, the court finds that the failure of the plaintiff to schedule an appraisal pursuant to the purchase agreement does not render the note ineffective, because the maker's liability under the terms of the note was not conditioned upon the happening of that event. (See Plaintiff's Exhibit, #11.)
General Statutes 42a-3-202 provides that "[n]egotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with any necessary endorsement." In support of its motion, the plaintiff has submitted the note payable to Hunter, with the endorsement of Hunter in favor of the plaintiff. (Plaintiff's Exhibit, #21.) In addition, the plaintiff has offered in support of summary judgment the Miller affidavit and the Hunter deposition, which indicate that Hunter delivered the endorsed note to the plaintiff. Therefore, no genuine issues of material fact exist regarding the lack of payment and the plaintiff's status a holder of the note. See General Statutes (Rev. to 1989)42a-3-202.
Although not raised specifically as a ground for. opposition to summary judgment, Wolfman has asserted the special defense of payment and he argued in his memorandum that payment was made to Hunter. (Defendant's Memorandum, p. 5) The general rule in regards to the defense of payment of a note is that
 [p]ayment to one not having possession of the instrument is ordinarily at the risk of the payor. Ordinarily, the debtor can assure himself on the point that he is making payment to the holder, only by seeing the note, the law requiring that the instrument be exhibited and surrendered to the party making the payment.
(Footnote omitted.) 10 C.J.S., Bills and Notes, 452(b), p. 992-93.
General Statutes (Rev. to 1989) 42a-3-603 follows the general rule, providing that "[t]he liability of any party is CT Page 1001 discharged to the extent of his payment or satisfaction to the holder." (Emphasis added.) Other jurisdictions have construed 3-603 of the U.C.C. consistently with the general rule noted above. See Lantz v. Safeco Title Ins. Co. of Oregon, 763 P.2d 744, 93 Or. App. 664 (1988), review denied,769 P.2d 779, 307 Or. 405 (1988) (payment to non-holder no defense under U.C.C. 3-603 in action by holder for payment); Lambert v. Barker, 348 S.E.2d 214, 216 (Va. 1986) (same proposition); Culberston State Bank v. Dahl, 617 P.2d 1295,1297 (Mont. 1980) (same proposition).
The Virginia supreme court has stated the rule regarding payment to a non-holder under U.C.C. 3-603 as follows:
 [p]ayment or satisfaction discharges the liability of a party only if made to the holder of the instrument. Code 8.3-603 . . . . Because payment in satisfaction of the instrument must be made to the party in possession in order to discharge the payor's liability, no notice is required for the protection of the payor. Rather, the payor may protect himself by demanding production of the instrument and refusing payment to any party not in possession unless in an action on the obligation the owner proves his ownership.
(Citations omitted; footnote omitted.) Id., 216. The Virginia court also rejected the defendant's alternative defense, i.e., that the plaintiff was not a holder in due course and took the note subject to defenses, noting that "[b]ecause the Barkers failed properly to assert the defense of payment to Lambert [the holder of the note], Lambert's status — whether as a holder in due course or not in due course — does not affect [the result in the case]." Id., 217.
The defendants in the present case have failed to show the existence of any genuine issue of material fact regarding the plaintiff's status as holder of the note, the validity of the note, or any defenses to the plaintiff's action on the note. The plaintiff has shown that there is no genuine issue of material fact as to its status as holder of the note and the lack of payment, and that the plaintiff is entitled to judgment on the third count as a matter of law. Therefore, the plaintiff's motion for summary judgment is hereby granted as to the third count. CT Page 1002
B. Summary Judgment as to the Sixth Count — Liability on the Mortgage
The plaintiff, in support of the motion for summary judgment, argues that the plaintiff's status as holder of the note entitles it to judgment on the sixth count. Wolfman, in opposition to summary judgment, submits the certified transcripts of the release of mortgage in favor of defendant.
"[A]n assignment of the debt carries with it the right and benefit of the security, though that be not assigned; and an assignment of the security apart from the debt transfers bare title, the beneficial interest in which remains with the owner of the debt." Second National Bank of New Haven v. Dyer, 121 Conn. 263, 269, 184 A. 386 (1936). However, an assignment of a mortgage is a conveyance of land subject to the recording statute. Id., 268. General Statutes 47-10
provides that "[n]o conveyance shall be effectual to hold any land against any other person but the grantor or his heirs, unless recorded on the records of the town in which the land lies."
The plaintiff has presented no evidence indicating that the assignment of the mortgage in favor of the plaintiff was ever recorded. The release of the mortgage, executed by Hunter in favor of Wolfman, and recorded in the land records, creates a genuine issue of material fact as to the plaintiff's right of foreclosure of the mortgage. Therefore, summary judgment is hereby denied on this ground.
Hurley, J.